LEE v. STATE.*

(Division B. April 6, 1925.)

[103 So. 366.  No. 24662.]

FALSE PRETENSES.  *Evidence held insufficient to sustain conviction for giving deed of trust upon cattle which accused did not own.*

Where a party gave a deed of trust upon described cattle to secure a party indorsing a note for him, and where a year and a half afterwards, when the trustee went to take the property, and the only cattle in the herd of the defendant was particular cattle of similar description to that described in the deed of trust, but where there was no pointing out of the cattle at the time of the giving of the deed of trust, and the witnesses for the prosecution are unable to say that defendant did not have cattle of the description given at the time of the giving of such deed of trust, and where the evidence for the defendant shows that he did have such cattle at such time, but they had died or strayed away since, and where there was a year and a half between the giving of the deed of trust and the attempted taking of the cattle, the evidence is insufficient to sustain the conviction.

---

*Headnote 1.  False Pretenses, 25 C. J., Section 88.

APPEAL from circuit court of Pearl River county.
HON. J. Q. LANGSTON, Judge.

T. U. Lee was convicted of fraudulently giving deed of trust on cattle which he did not own, and he appeals. Reversed and remanded.

138 Miss.—45.

*T. E. Salter,* for appellant.

Appellant is entitled to the presumption of innocence until his guilt is shown by affirmative testimony. *Owens* v. *State,* 80 Miss. 499, 32 So. 152. The burden of proof never shifts to the defendant in a criminal case. *Hampton* v. *State,* 54 So. 722; *Raines* v. *State,* 33 So. 19; *Blalock* v. *State,* 31 So. 105; *Brandon* v. *State,* 23 So. 517.

The gist of the charge in the indictment and the chief essential for proof at the hands of the state, is that the defendant represented that he owned the cattle described in the deed of trust, and that, indeed, and in truth, he did not own such cattle when he executed the deed of trust. I take it that the state will not contend that it was not incumbent upon it to prove upon the trial, affirmatively, and beyond each and every reasonable doubt, that the defendant did not own the cattle when he executed the deed of trust.

Looking through the entire record of testimony for the state, the only fact or circumstance which even remotely tends to establish the defendant's guilt is that one and one-half years after the execution of the deed of trust, Mr. Ladner, who had never seen the cattle embraced in the deed of trust, was able to point out in a herd of twenty-five to forty-four head of Lee cattle, four head, which to his mind, fitted the description of those embraced in the deed of trust, and that he could find no others in that herd which did meet said description, and defendant said the cattle which he gave a deed of trust upon had disappeared from the range along with other cattle and that he could not locate them. We challenge the state to point out to this court another single fact or circumstance from the record, tending to establish the fact that defendant did not own the cattle when he executed the deed of trust.

No man should be convicted on mere probability of guilt. *Booker* v. *State,* 9 So. 355.

*J. L. Byrd,* Assistant Attorney-General, for the state.

The circuit judge thought that there was sufficient evidence to go to the jury and we submit that a careful reading of the record will demonstrate that he was correct. Ladner the prosecuting witness took a deed of trust on certain cows, particularly described as to color and markings, and when he went out to find the cows, he found four cows which fitted the description. He testifies that the cows which he saw when he went to take possession of them under the deed of trust, were the ones on which the deed of trust was taken. The defendant told Ladner at the time the deed of trust was given that he owned the cows described and Ladner further testified on the same page that he, Ladner, was misled as to this statement of fact, and that being misled he parted with something of value, to-wit: three hundred dollars.

Now we see that when he went to get these cows, that is, the ones covered by the deed of trust, Mr. Lee claimed that they belonged to his, Lee's, wife, and Ladner swears positively that the cattle which Lee gave the deed of trust on and the cattle which he went to get, and the cattle covered by the deed of trust, were the ones which Lee told him belonged to him.

He testified further that he knew the cattle Lee had and that there were no other cattle which Lee owned or had at his place that would fit the description in the deed of trust, except the ones which later developments showed belonged to Lee's wife. We submit that this testimony which is unshaken on cross-examination, shows all the necessary elements of the crime and unexplained and uncontradicted were sufficient to convict. The other state's witnesses are corroborative of Ladner's testimony in many of the material particulars.

It is not a question in this case as to whether a member of this court, sitting as a juror would have convicted on the evidence of the record, but it is a question as to whether there is a disputed question of fact which a

reasonable man would be warranted in resolving against the defendant. If so, the verdict should stand. *Doe* v. *Digrowitty,* 4 S. & M. 57.

We submit that the record shows that the jury had competent and entirely sufficient evidence on which to base its verdict of guilty and that being true, that this verdict should be sustained.

ETHRIDGE, J., delivered the opinion of the court.

Appellant, T. U. Lee, was indicted for fraudulently giving a deed of trust on cattle which he did not own for the purpose of obtaining money and cheating one Seaborn Ladner and inducing him to sign a note with the appellant in order that appellant might secure some money. The circumstances out of which the transaction arose were as follows:

Lee desired to buy a Ford automobile, and did not have enough money to pay for it, and went to Ladner and asked him to indorse his, Lee's, note at the bank for three hundred dollars and, induced said Ladner to do so, and gave Ladner a deed of trust on certain cattle described as follows:

"one red-sided heifer with white back and belly, two years old; one deep red cow, seven years old; one red and white faced cow, eight years old; one blue-sided, white back and belly cow, seven years old."

The cattle were not pointed out to Ladner at the time of the transaction. Lee and his family owned a herd of cattle variously estimated at from twenty-five to forty-five head. The money was borrowed from the bank on the note signed by Lee and Ladner together, the car was purchased, and the note was renewed once, but finally was paid by Ladner. About a year and a half after the transaction arose Ladner sent the sheriff to the dipping vat where the cattle were being dipped in that neighborhood to get the cattle covered by the deed of trust from Lee's herd of cattle. The sheriff went and picked out a number of cattle conforming to the description con-

tained in the deed of trust. Lee informed the sheriff
that the cattle selected by the sheriff were not the cat-
tle upon which the deed of trust was given; that they be-
longed to his wife and son; and that the cattle on which
the deed of trust was given were not in the herd at that
time. However, the sheriff took charge of the cattle, and
Mrs. Lee and her son replevied them. Thereupon Lad-
ner procured an indictment of the appellant, and appel-
lant was tried and convicted of the offense charged, and
appeals from said conviction.

The question presented is the sufficiency of the evi-
dence to sustain a conviction. Ladner testified for the
state as to the transaction, and stated that Lee gave
him the description of the cattle called for in the deed of
trust, and procured him to sign a note, and that he, Lad-
ner, had to pay the note at the bank, and that Lee repre-
sented to him that he owned the cattle covered by the
deed of trust; that he first sent one Leon Strahan to
get the cattle and see the sheriff and when he went to
get the cattle that Lee said his wife owned the cattle;
that Ladner pointed out the cattle to the sheriff and the
sheriff brought them in; that the result of the replevin
suit was that Mrs. Lee and her son recovered the cattle;
that he had known Lee's cattle about seventeen years.
He was then asked the question:

"Q. Tell the jury whether he had any more cattle
there which would answer the description he gave? A.
He did not.

He was then asked as to the description of the cat-
tle contained in the deed of trust, and answered that Lee
had some red cattle, but none of that age; that Lee had
never repaid the money; that he, Ladner, would not have
indorsed Lee's note at the bank except for the represen-
tations made to him by Lee about the cattle. On cross-
examination Ladner was asked how far he lived from
Lee, and answered, "Four and a half miles." He was
asked:

"Q. You are familiar with his cattle? A. Yes, sir.

"Q. How many cattle did he own at that time? A. Twenty-five or thirty head.

"Q. Give us the description of the twenty-five or thirty head he owned? A. Various colors.

"Q. Name some of them? A. Most of them were red, and some white and red.

"Q. I see some red ones here? A. Yes, sir; and he had other red cows besides that.

"Q. He had other red cows of the description given here? A. No, sir.

"Q. How do you know? You didn't see them at all when the deed of trust was given? A. No, sir; but I know his cattle.

"Q. How do you know that it was a deep red one that he gave the deed of trust on? A. He said the deep red cow.

"Q. You don't know anything about his cattle except what he told you? A. I saw his cattle very often.

"Q. Isn't it a fact that at that time, T. U. Lee only owned four cows and ten head of oxen? A. I do not think he owned anything the way he gave the deed of trust. I know the stock of cattle that stayed at his home that he claimed were his.

"Q. Can you swear upon your oath to the jury that on the day he gave you this deed of trust that he did not own the cattle described in the deed of trust? A. No, sir.

"Q. So far as you know of your own knowledge the day he gave you the deed of trust he was the owner of the cattle described in the deed of trust? A. Yes, sir.

"Q. As far as you know that is true? A. Yes, sir, I know he claimed them.

"Q. You cannot say on your oath that he did not own them on that day? A. No, sir; he could not have sold them the day before."

Other witnesses were introduced, but were unable to describe the cattle particularly. They all stated that Lee had a herd of cattle, twenty-five to forty-five head of various colors, but they could not identify a particular, description of any of the cattle. Mrs. Lee, the wife of

the appellant, and two sons and the appellant all testify that the appellant at the time of the giving of the deed of trust owned cattle of the description therein contained and some oxen, but that he did not own the balance of the herd, and that, after giving the deed of trust, the Lee family moved away for about three months, going to some sawmill, and that while they were absent from home some of the cattle strayed away and others died; that they lost some twelve or fifteen head of cattle; and that the cattle covered by the deed of trust were among the missing. They testified positively on this point, and gave the names of close neighbors who they stated would know about their cattle. These neighbors lived some nine miles from the courthouse, and were not brought into court by the state.

The testimony of the witnesses for the state is indefinite. They found cattle of the description called for in the deed of trust a year and a half after the deed of trust was given, and at that time did not find any other cattle fitting the description. It is impossible to say from the testimony of the state's witnesses beyond a reasonable doubt that the appellant did not own, at the time he gave the deed of trust, the cattle described in it. The proof for the defendant is positive and emphatic that he did own such cattle and that they have since died or disappeared. The mind does not rest with entire confidence upon the defendant's version of the facts. It may be that he procured his wife and sons to claim the title, and they may be testifying falsely about the matter. Nevertheless the state's witnesses when cross-examined could not stand up to the test of personal knowledge, and the criminal law requires the proof to show guilt beyond a reasonable doubt. There is nothing that contradicts directly the defendant's version of the affair, and it is not wholly improbable on its face. We think the evidence fails to exclude reasonable doubt, and therefore that it is insufficient.

The judgment will therefore be reversed and the case remanded.

*Reversed and remanded.*